■ In the Matter of LONDON TOWNCARS, INC., Petitioner, v PHILIP R. MICHAEL, Respondent. — Determination of respondent Commissioner of the Department of Finance of the City of New York dated July 24, 1980, assessing against petitioner a utility tax deficiency plus interest in the sum of $61,057.95, after a hearing, unanimously annulled, on the law, without costs and the petition granted. In this CPLR article 78 proceeding transferred to this court pursuant to CPLR 7804 (subd [g]), petitioner London Towncars, Inc. (London), seeks annulment of a determination of respondent commissioner which, after a hearing, assessed against it a tax deficiency under the New York City Utility Tax Law (Administrative Code of City of New York, ch 46, tits Q, QQ) for the period January 1, 1960 to December 31, 1976. We are persuaded that the determination is not supported by substantial evidence and accordingly should be annulled. Pursuant to enabling legislation in subdivision (a) of section 1201 of the Tax Law, the New York City Utility Tax Law (Administrative Code, ch 46, tit QQ) presently imposes a 1.17% excise tax on gross income upon every " '[v]endor of utility services' " in the city, defined as a person who "sells gas, electric, steam, water, refrigeration, telephone or telegraph service, or who operates omnibuses" (Administrative Code, § QQ46-1.0, subd 7). Subdivision a of section QQ46-2.0 limits the imposition of the particular tax at issue herein to persons engaged in the business of operating omnibuses with a carrying capacity of more than seven persons. The terms "omnibus" and "carrying capacity" are not defined in the Utility Tax Law or the State enabling legislation. The issue presented is whether London's chauffeured Cadillac limousines are omnibuses with a carrying capacity of over seven persons. London has been engaged in the business of renting chauffeured vehicles by prearrangement with customers since February, 1960. Fees are based on hours used or total mileage. There are no regular routes, individually ticketed seating or scheduled operations between fixed termini; the customer determines the destination. We find it unnecessary to decide here whether the vehicles are "omnibuses" as that term is used in the relevant statutory sections, since it seems clear that they do not have a "carrying capacity of more than seven persons" under any realistic interpretation of that phrase. The uncontradicted evidence conclusively establishes that the vehicles in question will safely and reasonably seat a total of seven persons — six passengers and a driver. Each has a rear seat which accommodates three passengers, two jump seats which accommodate one passenger each, and a front seat which accommodates the driver and one passenger. The space between the driver and passenger is encumbered with radio equipment essential to the operation of London's business. Inasmuch as the limousines have a seating capacity of seven persons including the driver, we need not address London's further contention that it was erroneous to include the driver in determining the vehicles' carrying capacity. In reaching a contrary conclusion, respondent relied heavily on a listing by General Motors of the Cadillac Fleetwood limousines as having a capacity of nine. No doubt the interior of these cars could be arranged to permit such a number to be carried. As presently provided the capacity of these limousines, in light of their intended purpose and normal use, is indisputably as described above. Nor do we think respondent was correct in attaching significance to the fact that petitioner had described the vehicle as accommodating seven passengers plus a driver in insurance policies, registration certificates and a Finance Administration questionnaire. Uncontradicted testimony established that these listings were designed to protect petitioner against adverse legal consequences on the extremely rare occasion when, to meet an emergency, seven passengers were squeezed into the limousine. When the carrying capacity of these limousines is considered realistically

in light of the actual seating capacity and the customary intended use, respondent's determination lacks a substantial basis in the evidence. Concur — Kupferman, J. P., Sandler, Sullivan, Carro and Fein, JJ.